FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

JAN 1 8 2013

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

**UNITED PAIN CARE, LTD.**
**D/B/A UNITED PHARMACY**                                      **PLAINTIFF**

vs.                        CASE NO. 4:13-CV-029 DPM

**CARDINAL HEALTH 110, INC. and**
**CARDINAL HEALTH 411, INC.**                                 **DEFENDANTS**

---

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER WITHOUT**
**NOTICE, PRELIMINARY INJUNCTION, AND DAMAGES**

---

Plaintiff, **UNITED PAIN CARE, LTD D/B/A UNITED PHARMACY**, by its

attorneys, **THE LAW OFFICES OF DARREN O'QUINN PLLC**, for its

Complaint, states:

This case assigned to District Judge _Marshall_
and to Magistrate Judge _Deere_

**I.**

**PARTIES, JURISDICTION, AND VENUE**

1.     **UNITED PAIN CARE, LTD D/B/A UNITED PHARMACY**

(hereafter referred to as "**UNITED PHARMACY**") was at all times relevant to this

litigation a duly licensed pharmacy and corporation organized and existing under

the laws of the state of Arkansas with its principal place of business located in

Sherwood, Pulaski County, Arkansas. Therefore, **UNITED PHARMACY** is a

citizen of the state of Arkansas for diversity purposes under *28 U.S.C. § 1332(c)(1)*.

2.      **CARDINAL HEALTH 110, INC.** and **CARDINAL HEALTH 411, INC.** were at all times relevant to this litigation duly licensed pharmacy wholesale distributors and corporations organized and existing under the laws of the states of Delaware and Ohio, respectively, with their principal place of business located in Dublin, Ohio. Therefore, **CARDINAL HEALTH 110, INC.** and **CARDINAL HEALTH 411, INC.** (hereafter collectively referred to as "**CARDINAL HEALTH**") are citizens of the states of Delaware and Ohio, respectively, for diversity purposes under *28 U.S.C. § 1332(c)(1)*.

3.      The claims herein are brought against **CARDINAL HEALTH** are in accordance with the substantive laws of the state of Arkansas as set forth in its common law for money damages for tortious interference with business relations and breach of contract. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and, therefore, this court has original jurisdiction for diversity purposes under *28 U.S.C. § 1332(a)(1)*. Moreover, the claims herein involve the resolution of substantial questions of the federal Controlled Substances Act (*21 U.S.C. §§ 801-971*) and *21 C.F.R. § 1301, et. seq.* Therefore, this court has original jurisdiction for federal question purposes under *28 U.S.C. § 1331*.

4.      Venue is proper pursuant to *28 U.S.C. § 1391(b)(2)* in that all, or a substantial part, of the events or omissions forming the basis of these claims occurred in the Eastern District of Arkansas.

## II.
## EVENTS FORMING THE BASIS OF THIS CLAIM

5.    **UNITED PHARMACY** is a retail pharmacy located at 7481 Warden Road, Sherwood, Pulaski County, Arkansas. It has and has always operated with an active license issued by the Arkansas State Board of Pharmacy, in good standing with    no    disciplinary    actions    (this    information    available    at http://www.ark.org/asbp/roster/index.php?q=search/results).

6.    On November 18, 2010, **UNITED PHARMACY**, as a member of Pharmacy Plus Programs, LLC, agreed to be part of a buying group though the execution of a Member Certification Agreement and thereby became a third-party beneficiary of a Prime Vendor Agreement between **CARDINAL HEALTH** and Pharmacy Plus Programs, LLC. ***See copy of Member Certification Agreement attached as Exhibit "A" and Prime Vendor Agreement attached as Exhibit "B"*** [1](hereafter collectively referred to as "Agreements").

7.    Under the Agreements, **CARDINAL HEALTH** agreed to supply and **UNITED PHARMACY** agreed to purchase pharmaceutical products, including controlled prescription medications, from each other.

8.    Under the Agreements, **UNITED PHARMACY** agreed to maintain and satisfy all applicable licensing requirements of all applicable federal, state, and

---

[1] **UNITED PHARMACY** has on multiple occasions requested an executed copy of the Prime Vendor Agreement from **CARDINAL HEALTH,** but to date it has not been produced. Therefore, **UNITED PHARMACY** hereby requests leave of court to file the Prime Vendor Agreement as an exhibit to this Complaint once it is produced by **CARDINAL HEALTH.**

local governmental authorities to purchase, receive, possess, store, use, dispense, distribute, or otherwise dispose of pharmaceutical products.

9.  **UNITED PHARMACY** has fully and completely complied with the terms of the Agreements. *See **Affidavit of UNITED PHARMACY** Pharmacist-in-Charge Andy Rinchuso attached as Exhibit "C".*

10.  On or about July 18, 2012, and October 25, 2012, **CARDINAL HEALTH** informed **UNITED PHARMACY** that it wanted to conduct an audit, which **CARDINAL HEALTH** calls a "QRA visit."

11.  As it has always done when **CARDINAL HEALTH** requested a QRA visit, **UNITED PHARMACY** agreed to fully cooperate with **CARDINAL HEALTH'S** request.

12.  On or about August 15, 2012, and November 15, 2012 (after the above QRA visits, respectively), **CARDINAL HEALTH** informed **UNITED PHARMACY** that its controlled prescription medication sales were above what **CARDINAL HEALTH** considered normal for **UNITED PHARMACY'S** location and size. **CARDINAL HEALTH** refused, however, to provide **UNITED PHARMACY** with what it considered being normal for **UNITED PHARMACY'S** location and size.

13.  **UNITED PHARMACY** explained that it is located next to medical clinic specializing in the treatment of pain and operated by a board-certified interventional pain specialist and, therefore, receives a high volume of prescriptions from patients being seen at the clinic and wanting to conveniently fill their

prescriptions (information about this pain clinic is available at http://www.unitedpaincare.com/arkansas.php).

14.   **UNITED PHARMACY** also explained that both the pharmacy and the clinic have specific protocols and policies to prevent the abuse and diversion of controlled prescription medications. *See Affidavit of UNITED PHARMACY Pharmacist-in-Charge Andy Rinchuso attached as Exhibit "C".*

15.   It is the strong public policy and law of the state of Arkansas that pain should be treated as evidenced by the *Arkansas Chronic Intractable Pain Treatment Act*, codified at *Ark. Code Ann. § 17-95-701 et. seq.* Indeed, there the Arkansas General Assembly found that:

> (1) Pain management plays an important role in good medical practice;
>
> (2) Physicians should recognize the need to make pain relief accessible to all patients with chronic intractable pain; and
>
> (3) Physicians should view pain management as a regular part of their medical practice for all patients with chronic intractable pain.

*Id. at § 17-95-702.*

16.   **UNITED PHARMACY** has appealed and pleaded with **CARDINAL HEALTH** to reconsider, but **CARDINAL HEALTH** has refused to reinstate the Agreements and renew distribution of controlled prescription medications to **UNITED PHARMACY** while, at the same time, stringing **UNITED PHARMACY** along with hope that matters are still under review.

17.    Due to the highly regulated nature of the pharmacy business, **UNITED PHARMACY** has been unable to arrange an alternative pharmacy wholesale distributor. This, in turn, has burdened and endangered patients, resulted the pharmacy now operating at a loss, and caused a loss of business and associated good will. Additionally, because of **CARDINAL HEALTH'S** suspension of the Agreements, **UNITED PHARMACY** is unlikely to be able to find an alternative pharmacy wholesale distributor and, even if it could, one with the selection and prices available to **UNITED PHARMACY** as a member of Pharmacy Plus Programs, LLC. As a consequence, **CARDINAL HEALTH'S** unjust suspension of the Agreements will effectively put **UNITED PHARMACY** out of business because it would be out-of-stock of controlled substances for an extended period of time. *See Affidavit of UNITED PHARMACY Pharmacist-in-Charge Andy Rinchuso attached as Exhibit "C".*

### III.
### CLAIMS FOR RELIEF

**First Claim: Tortious Interference With Business Relationships**

18.    **UNITED PHARMACY** incorporates by reference herein and re-alleges all of the above allegations.

19.    Pursuant to the terms of the Agreements, **CARDINAL HEALTH** was required to supply **UNITED PHARMACY** with controlled prescription mediations during the term of the Agreements so long as **UNITED PHARMACY** maintained its licensure with all applicable federal, state, and local governmental authorities.

20.   **UNITED PHARMACY** has fully complied with all of the provisions of the Agreements and completely met all of its obligations to **CARDINAL HEALTH**.

21.   **CARDINAL HEALTH** has refused to provide controlled prescription medications to **UNITED PHARMACY** as required by the Agreements.

22.   **CARDINAL HEALTH'S** action to suspend shipment of controlled prescription medications to **UNITED PHARMACY** has interfered with **UNITED PHARMACY'S** contractual relationship and business expectancy with Pharmacy Plus Programs, LLC and its patients as set forth in *Arkansas Model Jury Instructions (Civil) 403 and 404* and other applicable laws. This interference was intentional and reckless entitling **UNITED PHARMACY** to punitive damages as defined by *Arkansas Model Jury Instructions (Civil) 2218*.

### Second Claim: Breach of Contract

23.   **UNITED PHARMACY** incorporates by reference herein and re-alleges all of the above allegations.

24.   Pursuant to the terms of the Agreements, **CARDINAL HEALTH** was required to supply **UNITED PHARMACY** with controlled prescription mediations during the term of the Agreements so long as **UNITED PHARMACY** maintained its licensure with all applicable federal, state, and local governmental authorities.

25.   **UNITED PHARMACY** has fully complied with all of the provisions of the Agreements and completely met all of its obligations to **CARDINAL HEALTH**.

26.   **CARDINAL HEALTH** has refused to provide controlled prescription medications to **UNITED PHARMACY** as required by the Agreements.

27.   **CARDINAL HEALTH** did not provide **UNITED PHARMACY** with written notice of any alleged breach or an opportunity to cure any alleged breach as required by the Agreements.

28.   **CARDINAL HEALTH'S** action to suspend shipment of controlled prescription medications to **UNITED PHARMACY** has breached **UNITED PHARMACY'S** contractual relationship with **CARDINAL HEALTH** as set forth in *Arkansas Model Jury Instructions (Civil) 2401* and other applicable laws. This breach entitles **UNITED PHARMACY** to attorney fees pursuant to *Ark. Code. Ann. § 16-22-308*.

## IV.

### APPLICATION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AND PRELIMINARY INJUNCTION

29.   **UNITED PHARMACY** incorporates by reference herein and re-alleges all of the above allegations.

30.   The actions of **CARDINAL HEALTH** entitle **UNITED PHARMACY** to a temporary restraining order without notice and preliminary injunction under *Fed R. Civ. P. 65*.

31.   The traditional purpose of a temporary restraining order and preliminary injunction is to preserve the status quo until the court has had an opportunity to hold a trial on the merits. In considering whether to grant a preliminary injunction, a court must consider four factors: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm; (3) the state of balance between the threat of harm and the injury that granting the

injunction will inflict on other parties; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981)*. The district court's inquiry is an equitable one, requiring the court to consider "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Velek v. Arkansas, 198 F.R.D. 661, 663 (E.D. Ark. 2001)* (quoting *Dataphase, 640 F.2d at 113*). No single factor is determinative, and the factors are not a rigid formula. *Id.* The party seeking a preliminary injunction bears the burden of proving that an injunction is necessary, and the decision to grant or deny the preliminary injunction is within the broad discretion of the district court. *Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006); Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987)*.

## A. THREAT OF IRREPARABLE HARM

32.     At this point in the proceedings, **UNITED PHARMACY'S** motion for temporary and preliminary injunctive relief primarily turns on the second *Dataphase* factor, the threat of irreparable harm in the absence of a preliminary injunction. "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. . . ." *11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1, at 139 (2d ed. 1995)*. "There must be a likelihood that irreparable harm will occur. . . . [A]

preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Id. § 2948.1, at 153-55; see also Kaplan v. Bd. of Educ. of City Sch. Dist. of City of New York, 759 F.2d 256, 259 (2d Cir. 1985)* (predictions of havoc and unrest were too speculative to constitute clear showing of immediate irreparable harm).

33. As demonstrated by affidavit of Andy Rinchuso, the actions of **CARDINAL HEALTH** has basically destroyed **UNITED PHARMACY'S** ability to serve the sick, diseased, and hurting patients in Arkansas who come for treatment at the pain clinic next door and who need their medications. This has also destroyed the patient's freedom of choice to choose the pharmacy of their choice, the pharmacist-patient relationship, and the goodwill **UNITED PHARMACY** had established with its patients. *See Affidavit of UNITED PHARMACY Pharmacist-in-Charge Andy Rinchuso attached as Exhibit "C".*

34. Moreover, and as also demonstrated by affidavit of Andy Rinchuso a preliminary injunction is necessary to maintain the status quo. The purpose of a preliminary injunction is to preserve the status quo so that the court can render a meaningful decision on the merits after a trial. *See Penn v. San Juan Hosp., Inc., 528 F.2d 1181, 1185 (10th Cir. 1975)* ("The object of the preliminary injunction is to preserve the status quo pending the litigation of the merits."); *Missouri-Kansas-Texas R. Co. v. Randolph, 182 F.2d 996, 999 (8th Cir. 1950)* ("A temporary injunction is usually issued to preserve the status quo until a hearing on the merits may be had."); *United States v. Adler's Creamery, 107 F.2d 987, 990 (2d Cir.*

*1939)* (stating that a preliminary injunction's "ordinary function is to preserve the status quo and it is to be issued only upon a showing that there would otherwise be danger of irreparable injury"); *11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2947 (2d ed. 1995)*. "Ordinarily, the court in its discretion may grant a preliminary injunction where it appears that there is a substantial controversy between the parties and that one of them is committing an act or threatening the immediate commission of an act that will cause irreparable injury or destroy the status quo of the controversy before a full hearing can be had on the merits of the case, and generally such an injunction will be granted whenever necessary to the orderly administration of justice." *Missouri-Kansas-Texas R. Co., 182 F.2d at 999* (quoting *Benson Hotel Corp. v. Woods, 168 F.2d 694, 697 (8th Cir. 1948)*).

35.     Here, **UNITED PHARMACY** states that it is in compliance with all applicable licensing requirements of all applicable federal, state, and local governmental authorities to purchase, receive, possess, store, use, dispense, distribute, or otherwise dispose of pharmaceutical products and has fully and completely complied with the terms of the Agreements. **UNITED PHARMACY** further states that it cannot arrange alternative supplies of controlled medications and, therefore, it is burdensome and even dangerous to its patients who need pain care, is causing **UNITED PHARMACY** to lose incalculable business and operate at a loss, threatening its very existence, and is causing a loss of goodwill and reputation, as well as causing current and prospective patients of the pharmacy to

lose confidence in it as a stable source of prescription services at a time when their medical conditions demand stability (which is especially damaging for a fairly new pharmacy like **UNITED PHARMACY** that is trying to establish itself in a competitive market). *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003)* (internal quotation marks omitted) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury. . . . Harm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars.") The status quo will only continue to deteriorate for **UNITED PHARMACY**.[2]

## B. REMAINING FACTORS

36.     The remaining factors that the Court must consider are the probability of success on the merits, the balance of harms, and the public interest. As for the probability that the **UNITED PHARMACY** will succeed on the merits at trial, it is clear from affidavit of Andy Rinchuso that no diversions have taken place at his pharmacy and that responsible controls to prevent such diversions are in place. Indeed, Arkansas pharmacy regulations require these controls and the most recent inspection by the Arkansas Board of Pharmacy found compliance with the pharmacy regulations. **See Ark. State Bd. Of Pharm. Reg. 04-00-0015**

---

[2] It is anticipated that **CARDINAL HEALTH** will argue that it has not shipped to **UNITED PHARMACY** since February of 2012 and, therefore, there is no emergent need to change this status quo. This argument, however, is misleading in light of the attached Affidavit of Andy Rinchuso that demonstrates that **UNITED PHARMACY** has been strung along with repeated representations that **CARDINAL HEALTH** was "working on a resolution of the issue." As Pharmacist-in-Charge Rinchuso states, however, **UNITED PHARMACY** is now on the brink of going out of business and has exhausted its ability to withstand the improper actions of **CARDINAL HEALTH** and service his patients.

(Responsibility for Security of Controlled Substances) and *Affidavit of UNITED PHARMACY Pharmacist-in-Charge Andy Rinchuso attached as Exhibit "C"*. On the other hand, **CARDINAL HEALTH** is evidently relying upon some rigid, "one-size-fits-all" formula, which it has refused to identify, to "red-flag" **UNITED PHARMACY** as a "potential" diverter of controlled substances without regard to **UNITED PHARMACY'S** actual location next door to a pain clinic.

37.     The other two factors--the public interest and the state of balance between the threat of harm and the injury that granting the injunction will inflict on other parties--are closely tied. Arkansas public policy as evidenced by the *Arkansas Chronic Intractable Pain Treatment Act* points more strongly toward granting an injunction than not, in part because of the nature of the very vulnerable patient population of **UNITED PHARMACY** and its irreversible loss of business, goodwill, and reputation.

38.     For these reasons, **UNITED PHARMACY** requests that the court issue an order providing immediate relief to it and order **CARDINAL HEALTH** to resume it shipments to **UNITED PHARMACY** as provided by the Agreements.

## V.

## DAMAGES

39.     As a proximate result of the above conduct, **UNITED PHARMACY** has suffered and will continue to suffer irreparable harm, economic damages, and other injuries and is entitled to damages that will reasonably and fairly compensate it for the lost profits, loss of good will and reputation, and all other compensatory,

consequential, and incidental damages, including without limitation reasonable costs and attorney fees, and other injuries that **UNITED PHARMACY** has incurred and will continue to incur, all in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases. Moreover, because **CARDINAL HEALTH'S** conduct was intentional, and **CARDINAL HEALTH** knew or should have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in injury, yet **CARDINAL HEALTH** still failed to discharge its responsibilities to **UNITED PHARMACY** and continued its conduct in reckless disregard and with a conscious indifference for **UNITED PHARMACY'S** contractual relationships and business expectancies causing **UNITED PHARMACY** to suffer the injuries set forth herein, **CARDINAL HEALTH** is liable for punitive damages in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases and sufficient to punish **CARDINAL HEALTH** and deter it and others from similar conduct.

## VI.
### REQUEST FOR JURY TRIAL

40.    **UNITED PHARMACY** requests a trial by a 12-person jury on all jury issues.

## VII.
### PRAYER FOR RELIEF

THEREFORE, plaintiff, **UNITED PHARMACY**, respectfully requests the following relief:

(A)   A temporary restraining order without notice and preliminary injunction pending a trial on the merits;

(B)   A judgment against **CARDINAL HEALTH**, jointly and severally, for all general and special compensatory damages caused by its conduct of in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases and as proven at trial;

(C)   A judgment against **CARDINAL HEALTH**, for punitive damages in an amount necessary and sufficient to punish and deter it and others from similar conduct in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases and as proven at trial;

(D)   All costs and attorney fees expended herein;

(E)   A trial by a 12-person jury on all jury issues;

(F)   All other relief to which he is entitled or that the Court deems just and proper.

Respectfully submitted,

M. Darren O'Quinn, AR Bar #87-125
**LAW OFFICES OF DARREN O'QUINN PLLC**
Plaza West Building
415 N. McKinley, Suite 1000
Little Rock, AR 72205
(501) 975-2442 telephone
(501) 975-2443 facsimile
Darren@DarrenOQuinn.com email

**Attorney for Plaintiffs**

## FED. R. CIV. P. 65(b)(1)(B) VERIFICATION

Plaintiff's counsel, M. Darren O'Quinn, of lawful age, being first duly sworn and upon oath, state:

1.    Plaintiff's counsel has been in contact with **CARDINAL HEALTH** counsel **Joseph E. Ezzie of BakerHostetler, Capitol Square 65 East State Street, Suite 2100 Columbus, OH 43215-4260** (T: 614.462.4758; Email: jezzie@bakerlaw.com) and **Leigh M. Chiles of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, First Tennessee Building, 165 Madison Avenue, Suite 2000, Memphis, TN 38103** (Direct Dial: 901.577.2207; Email: lchiles@bakerdonelson.com).

2.    These attorneys have agreed to accept service of this Complaint, which has been accomplished by providing a copy of it to them this date, and have requested notice of any temporary restraining order hearings.

3.    Plaintiff's counsel verifies the foregoing facts as true and correct to the best of his knowledge and belief.

_____
M. Darren O'Quinn

Subscribed and sworn to before me this 18 day of January, 2013.

_____
Notary Public

My commission expires:

March 31, 2018

> HILARY SHRUM
> Arkansas - Pulaski County
> Notary Public - Comm# 12365421
> My Commission Expires Mar 31, 2018

**EXHIBIT A**

### List of Members

### United Pain Care
### 7481 Warden Road
### Sherwood, AR 72120

**EXHIBIT B**

### PHARMACY PLUS PROGRAMS, LLC
### MEMBER CERTIFICATION AGREEMENT
### FOR   UNITED PAIN CARE]

This Pharmacy Plus Programs, LLC Member Certification Agreement (the "**Certification Agreement**") is made and entered into by and between   **UNITED PAIN CARE**  and  Cardinal Health 110, Inc. ("**Cardinal Health**").

**1.      Member Certification**

The undersigned is a member ("**Member**") of the Pharmacy Plus Programs, LLC ("**Group**") network of providers of pharmaceuticals and has elected to purchase pharmaceuticals from Cardinal Health under the terms of that certain Prime Vendor Agreement by and between Group and Cardinal Health which was effective as of August 9, 2010 (the "**Prime Vendor Agreement**").

The Member certifies, through an authorized representative, that the Member has received a copy of the Prime Vendor Agreement, and has carefully read and fully understands the material terms of the Prime Vendor Agreement and the Member's and Cardinal Health's rights and responsibilities under the Prime Vendor Agreement.  The Member further certifies that throughout the remainder of the term of the Prime Vendor Agreement, and as part of the consideration for Cardinal Health continuing to sell pharmaceuticals to the Member, the Member agrees to be bound by the terms of the Prime Vendor Agreement.

**2.      Capitalized Terms**

All capitalized terms used in this Certification Agreement not otherwise defined herein shall have the same meaning as is ascribed to them in the Prime Vendor Agreement.

**3.      Term**

This Certification Agreement shall be effective as of  11/18, 2010, and shall continue in effect thereafter throughout the *shorter* of: (a) the remainder of the term of the relationship between Cardinal Health and Group under the Prime Vendor Agreement or (b) the remainder of the term of the relationship between Group and Member.

**4.      Licensure & Own Use**

Member represents and warrants to Cardinal Health that Member has complied with, and is currently and will be at all times during the term in compliance with, all applicable licensing requirements of all applicable federal, state are local governmental authorities, including without limitation any

licensing requirements to purchase, receive, possess, store, use, dispense, and/or distribute or otherwise dispose of pharmaceutical products. Prior to purchasing Rx Products from Cardinal Health hereunder and at all times during the term of this Certification Agreement, Member will provide Cardinal Health with copies of all such licenses and any renewals, revocations, changes or notices related thereto. All purchases by the Member under the Prime Vendor Agreement will be for the Member's "own use" as that term is defined in judicial or legislative interpretation and shall not be sold to anyone other than an end user. Cardinal Health may terminate this Certification Agreement and Member's participation under the Prime Vendor Agreement immediately in the event it reasonably determines that the is in breach of this paragraph.

5.      **Miscellaneous**

No waiver of any right or remedy by Cardinal Health shall constitute a subsequent waiver of the same right or remedy. No changes to this Certification Agreement shall be made or be binding on either party unless made in writing and signed by both parties to this Agreement. The validity and interpretation of this Certification Agreement shall be determined by the laws of the State of Ohio, excluding its conflicts of laws provisions. This Certification Agreement shall not be assigned by either party without the prior written consent of the other party; provided, however, Cardinal Health may assign its rights and obligations hereunder without such consent to any entity which is controlled by or under common control with Cardinal Health, Inc.

| | |
|---|---|
| **UNITED PAIN CARE** | **Cardinal Health 110, Inc.** |
| **27481 Warden Road** | **7000 Cardinal Health Place** |
| **Sherwood, AR, 72120** | **Dublin, Ohio 43017** |
| Telecopy: _____ | Telecopy: (614) 757-6000 |
| By: _Richmond Ahmad_ | By: _____ |
| Title: _Owner_ | Title: _Sale Director_ |
| Date: _12/9/2010_ | Date: _12/16/10_ |

# Exhibit B

Requested from Cardinal Health per Footnote 1 of Complaint.

## EXHIBIT "C"

**AFFIDAVIT AND VERIFICATION OF ANDY RINCHUSO, P.D.**

| | |
|---|---|
| STATE OF ARKANSAS | ) |
| | ) ss |
| COUNTY OF PULASKI | ) |

I, Andy Rinchuso, P.D., of lawful age, being first duly sworn and upon oath, state:

1.     I am a pharmacist licensed by the state of Arkansas and the licensed pharmacist-in-charge of United Pharmacy in good standing with the Arkansas State Board of Pharmacy.

2.     I have read the foregoing Complaint and understand its contents. I hereby state that the facts set forth in the Complaint and this Affidavit are true and correct to the best of my knowledge and belief.

3.     If an injunction is not granted in this matter to maintain the status quo, United Pharmacy and its patients will suffer immediate and irreparable injury, loss, or damage as evidenced by the following:

a)     Cardinal Health has cut-off the supply of any controlled substances to United Pharmacy, but led me to believe that its representatives were working on a resolution of the issue.

b)     It is now apparent that Cardinal Health is not going to resume its duties under the Agreements. United Pharmacy has been

operating at a loss since Cardinal Health cut-off our supplies (currently an 85% loss in business not including new customers and goodwill).

c)      United Pharmacy is completely out of Schedule-II controlled prescription medications (also known as C-II and the ones primarily used for serious and chronic pain).   Despite numerous efforts, the pharmacy has been unable to obtain an alternate supply— the reason being given to me is that if Cardinal Health will not supply us then neither can they.

d)      It is burdensome, impractical, and sometimes impossible for a patient to fill all non-C-II mediations at United Pharmacy and then attempt to fill the balance of the C-II medications at another pharmacy. Some patients have told me that other pharmacies make them feel like second class citizens if they are only filling pain medications—the implication being that they are drug seeking and not really in pain. Others have limited transportation and mobility and are unable to conveniently travel to multiple locations for their doctor appointments and prescriptions. As a consequence, Cardinal Health has basically destroyed our ability to serve the sick, diseased, and hurting patients in North Little Rock and surrounding areas who come for treatment at the pain clinic next door and need their medications. This has also destroyed the patient's freedom of choice to choose the

pharmacy of their choice, the pharmacist-patient relationship, the goodwill we had established with the patients and the pharmacy's reputation, and has caused current and prospective patients of the pharmacy to lose confidence in it as a stable source of prescription services at a time when their medical conditions demand stability (which is especially damaging for a fairly new pharmacy like **UNITED PHARMACY** that is trying to establish itself in a competitive market).

4.     United Pharmacy has and has always maintained and satisfied all applicable licensing requirements of all applicable federal, state, and local governmental authorities to purchase, receive, possess, store, use, dispense, distribute, or otherwise dispose of pharmaceutical products and has fully and completely complied with the terms of the Agreements as evidenced by the following:

a)     United Pharmacy fills a high volume of controlled substance prescriptions because it is located next to a pain clinic. In my opinion as a pharmacist, the pain clinic is a reputable clinic and is operated by a board-certified interventional pain specialist (**http://www.unitedpaincare.com/arkansas.php**).

b)     I have personally discussed with the pain clinic and reviewed the pain clinic's policies and procedures in place to prevent the diversion of controlled substances. These policies and procedures are outstanding and are attached as Exhibit "1" to this affidavit.

c)      In addition to these pain clinic policies and procedures, I have an independent and corresponding duty under federal and state law to prevent the diversion of controlled substances from United Pharmacy. In this regard, the following policies and procedures are used by the pharmacy to guard against theft and diversion of controlled substances:

- an alarm system in case of a break-in;

- multiple security cameras;

- only the pharmacist-in-charge has keys to the pharmacy;

- only the pharmacist-in-charge orders controlled substances;

- only the pharmacist-in-charge checks in deliveries of controlled substances and this is done immediately to ensure accuracy;

- only the pharmacist-in-charge dispenses controlled substances;

- all controlled substances are stored in the pharmacy in accordance with DEA security requirements (21 CFR §1301.75);

> Large quantities of controlled substances are stored in a securely locked, substantially constructed separate safe;

> The pharmacist-in-charge keeps inventories of controlled substances as required by 21 CFR §1304.11;

> The dispensing pharmacist-in-charge has the duty to maintain a constant vigilance against forged or altered prescriptions. The law holds the pharmacist has a corresponding responsibility for assuring that a prescription for controlled substances is written for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice (21 CFR §1306.04 (a)) (compliance with this requirement is simplified by the working relationship established between the pharmacy and the pain clinic);

> The pharmacist-in-charge is familiar with the U. S. Department of Justice Drug Enforcement Administration website and its pharmacist guide for controlled substances (found at

http://www.deadiversion.usdoj.gov/pubs/manuals/pharm2/

index.html) and A Pharmacist's Guide to Prescription

Fraud

(http://www.deadiversion.usdoj.gov/pubs/brochures/pharm

guide.htm)

d)      The latest inspection conducted by the Arkansas State

Board of Pharmacy found no deficiencies in complying with the above

laws and I am aware of none.

5.      Pain is a legitimate medical condition for which controlled

substances were developed to treat. My obligations as a pharmacist are to

dispense medications for legitimate medical purposes while, at the same

time, being on guard for diversion of medications. I take these obligations

very seriously and to the best of my information, knowledge, and belief my

obligations have been ethically and legally fulfilled at **UNITED**

**PHARMACY.**

**FURTHER AFFIANT SAYETH NOT.**

Andy Rinchuso, P.D.

Subscribed and sworn to before me this __11__ day of January, 2013.

Notary Public

**My commission expires:**

_8-24-2016_



★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★

**UNITED PAIN CARE**

☎: (501) 834 PAIN (7246)    www.unitedpaincare.com    🖨: (501) 542 4295

## PRACTICE FEATURES TO PREVENT DIVERSION OF CONTROLLED SUBSTANCES

### PRACTICE PROFILE

1. Dr Mahmood Ahmad is Board Certified in Pain Medicine since 1998 by The American Board of Anesthesiology. He is well published and a speaker for Pharmaceuticals and Toxicology (see CV)
2. Interventional pain practice to wean or reduce narcotic requirements
3. Sees all patients himself, there are no Nurse Practitioners, Physician Assistants
4. Pain Pump patients with high success rate for patients with high narcotic requirements
5. Spinal cord stimulator patients completely weaned off opioids
6. Schedule II patients never mailed prescriptions. Face-to-face visits are mandatory
7. No police reports accepted
8. No early refills
9. If there is travel, gas receipts or airline ticket copies are kept on file
10. No prescriptions are called in
11. No treatments over the phone
12. Pill Counts
13. Prescription labels or bottles to verify they have filled medications
14. Patients are accepted through physician referral only

### SIGNED AGREEMENT FOR TREATMENT OF PAIN WITH CONTROLLED SUBSTANCES

1. Educational Consent Form (attached)
2. Responsibilities for practitioner and patient are defined
3. Strict compliance is enforced with regards to lost or stolen medications
4. Pharmacy Consent

### RANDOM URINE TESTING

1. Urine drug levels
2. Samples taken in the clinic for spot testing for consistency

### PRESCRIPTION WRITER

1. Locked printer
2. Electronic prescriptions
3. Always Legible
4. No spelling errors
5. Pill count with end date
6. Do not fill before date feature
7. Boxed format
8. Clinic logo
9. Security features on paper
10. Paper difficult to obtain
11. Will give VOID on copy machines
12. Blue shade background
13. Watermark
14. Scanned image of each prescription is kept in chart



EXHIBIT

1

7481 Warden Rd, *Sherwood*, AR 72120

**BUILDING CONFIGURATION: WAITING ROOMS LOCKED TO PATIENT AREAS**

Dr Ahmad was issued a license by the Arkansas State Board of Pharmacy for a retail pharmacy on site in the clinic in January 2010. Dr. Ahmad presented the case in front of the board members.

Pharmacy has been able to monitor the medications.

Avoid diversion to get the medications from one pharmacy.

The pharmacist can alert me if they have been filling medications elsewhere.

They cannot copy my prescriptions

TO DATE >150 patients have been fired for suspected diversion.